MATTER OF RODRIGUEZ

In Deportation Proceedings

A-18090257

*Decided by Board August 3, 1971*

Respondent, a native and citizen of the Dominican Republic, was admitted for permanent residence on August 10, 1968, upon presentation of an immigrant visa issued July 31, 1968, with a waiver of a labor certification as the unmarried child of a lawful permanent resident alien. In connection with the visa application, he signed State Department Form FS–548 indicating awareness that he would be subject to exclusion if he married prior to entry. He was married on August 8, 1968, and, therefore, is deportable as an alien excludable at entry under section 212(a)(14) of the Immigration and Nationality Act, as amended, for lack of a valid labor certification, since he was not an unmarried child as defined by section 101(b)(1) of the Act at the time of entry.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable by law existing at time of entry (section 212(a)(14); 8 U.S.C. 1182)—immigrant, no valid labor certification.

ON BEHALF OF RESPONDENT:
Antonio C. Martinez, Esquire
77 Seventh Avenue
New York, New York 10011
(Brief filed)

ON BEHALF OF SERVICE:
Martin J. Travers
Trial Attorney
(Brief filed)

The special inquiry officer, in a decision dated April 6, 1971, denied the respondent's application for termination of the proceedings; granted him the privilege of voluntary departure; and provided for his deportation from the United States to the Dominican Republic, on the charge contained in the order to show cause, in the event of his failure so to depart. The appeal from that decision, which brings the case before this Board for consideration, will be dismissed.

The record relates to a 21-year-old male alien, a native and citizen of the Dominican Republic, who last entered the United States on August 10, 1968. He was then admitted for permanent resi-

dence upon presentation of an immigrant visa issued to him on July 31, 1968, by the American Embassy, Santo Domingo, Dominican Republic, with a waiver of a labor certification under section 212(a)(14) of the Immigration and Nationality Act, as the unmarried child of a lawful permanent resident alien of the United States. However, he had married Amparo Rosario on August 9, 1968, at Santo Domingo, Dominican Republic.

Section 212(a)(14) of the Immigration and Nationality Act renders ineligible to receive visas and excludable from admission into the United States aliens seeking to enter this country for the purpose of performing skilled or unskilled labor, unless they are in possession of a certification from the Secretary of Labor. The statute specifically provides that the exclusion of aliens thereunder shall apply to special immigrants, defined in section 101(a)(27)(A) of the statute as meaning an immigrant born in any independent foreign country of the Western Hemisphere or the Canal Zone. It does provide for an exception to the exclusion provision in the cases, *inter alia*, of children of aliens lawfully admitted to the United States for permanent residence (in this case respondent's mother enjoyed such status). However, section 101(b)(1) of the Act defines the term "child" as meaning an *unmarried person* under 21 years of age.

The pertinent facts of this case recited above, viewed in the light of the pertinent statutory provisions just enumerated, compel concurrence in the special inquiry officer's conclusion that the respondent's deportability on the above-stated charge is established. The contentions to the contrary advanced by counsel in the course of the hearing before the special inquiry officer have been adequately answered by said official in his comprehensive opinion, and need no repetition here. On appeal, however, counsel has come forward with a somewhat ingenious argument which, while rejected, requires a detailed response.

Counsel points out that 22 CFR 42.122(d) requires the visa-issuing officer abroad to warn the alien clearly and unequivocally that he will be inadmissible to the United States if he is not unmarried at the time of his application for admission to this country. He argues that the alien, in order to be warned, must understand and appreciate the consequences of what will happen if he does not remain single. He asserts that the consular officer does not discharge his duty to warn by having the alien merely sign a form at a time when the alien signs more than half a dozen other forms. He urges that the only reasonable explanation why this respondent did get married in the light of the danger to his pre-

ferred status is that he did not know or understand the contents of the Form FS–548, *infra*, which he signed and the evidence shows that no one informed him that he could not get married without destroying his preferred status. He concludes that the consular officer who issued this respondent his visa clearly failed in his duty to warn the respondent, and that thus the latter is not the author of his own misfortune but is being punished for failure of the consular officer to carry out his mandated duty.

This Board has consistently taken the position in cases of this type that the alien is deportable even if he practices no fraud or concealment, *Matter of C––*, 8 I. & N. Dec. 665. Specifically, this record contains a mimeographed, one-page document, FS–548, dated July 31, 1968, signed by the respondent and attached to his visa. This declaration states, "I understand that I shall lose my special, immediate relative or preference status or right to benefit from the immigrant status from my accompanying parent if I marry prior to my application for admission at a port of entry into the United States and that I would then be subject to exclusion therefrom." This declaration appears both in English and Spanish, and is signed by the respondent on the blank line for signature at the beginning of the paragraph in Spanish. The record shows that the respondent attended school for nine years, and that he was completely literate in the Spanish language. Also as pointed out by the special inquiry officer (p. 6), the respondent testified that the United States consul told him he was being granted an immigrant visa on the basis of being the unmarried son of a legal resident alien.

Moreover, there is a presumption of official regularity which attaches to the consular officer's issuance of the visa in question, including his compliance with the provisions of 22 CFR 42.122(d). The fact that the respondent did sign the Form FS–548 is corroborative of the presumption. The respondent's testimony supports the foregoing and indicates that he was knowledgeable of the fact that if he did marry, he would lose the benefit derived as a result of his allegation that he was the unmarried son of a legally resident alien. Finally, in this connection, it is not incumbent upon the Government to establish that the respondent willingly and knowingly signed the Form FS–548 in order to sustain the charge contained in the order to show cause.

In conclusion, counsel advanced the contention that these proceedings deprive the respondent of his right to due process of law under the Fifth Amendment to the Constitution of the United States, and also constitute cruel and unusual punishment to him

in violation of the Eighth Amendment to the Constitution of the United States. Technically speaking, these arguments properly rest with the courts rather than this administrative tribunal. Substantively, however, as pointed out by the Service trial attorney, who has cited appropriate authority, these questions have been considered and found wanting by the courts on several occasions. Further comment on this aspect of the case is unnecessary. All we need add is that the execution of the special inquiry officer's order has been stayed during the pendency of this appeal.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

*It is further ordered* that, pursuant to the special inquiry officer's order, the respondent be permitted to depart from the United States voluntarily within 30 days from the date of this decision or any extension beyond that time as may be granted by the District Director; and that, in the event of failure so to depart, the respondent shall be deported as provided in the special inquiry officer's order.